[Barnard v. The State.]

# Barnard *v.* The State.

*Selling Liquor Without License.*

(Decided Jan. 133, 1909. 48 South. 483.)

1. *Intoxicating Liquors; License.*—The license to retail intoxicating liquors is a personal permit, and not a contract, not assignable in the absence of statutory authority, nor subject to the demands of creditors, and does not protect another than the licensee or his representative in the conduct of the retailing business.

2. *Same; Effect of Bankruptcy of Licensee.*—A licensee may continue to sell under his license subsequent to the adjudication of his bankruptcy, since bankruptcy does not cancel his privilege.

3. *Same; Evidence.*—Where a person purchased the bankrupt stock of a retail liquor dealer, and resold them to him after adjudication in bankruptcy, taking a mortgage on the goods and retaining possession of the goods to secure the purchase price, the parties agreeing that the seller should conduct the business as manager for his own security until the purchase price was paid, as the employe of the licensee at a stated salary, then such seller was an employe of the licensee and within the protection of his license.

APPEAL from Montgomery City Court.

Heard before Hon. W. H. THOMAS.

Dave Barnard was convicted of selling intoxicating liquors without a license, and he appeals. Reversed and rendered.

JOHN W. A. SAMFORD, JR., for appellant. No brief came to the Reporter.

ALEXANDER M. GARBER, Attorney-General, for State. The license was a mere personal privilege to Lenzer, and the scheme resorted to, did not authorize Barnard to sell under such license.—23 Cyc. 154; *Powell v. The State,* 69 Ala. 10; *Southern Car & Found. Co. v. The State,* 133 Ala. 624; Code 1896, Sec. 2401.

McCLELLAN, J.—The defendant's conviction was upon an indictment charging him with retailing without a license. The trial was upon an agreed statement

of facts, which were, in substance, as follows: Lenzer had a license to engage during the year 1907, and was engaged, in retailing intoxicating liquors. In May, 1907, he was adjudged a bankrupt, and at a sale, under the direction of the bankruptcy court, the defendant Barnard became the purchaser of the stock of liquors of the bankrupt. Under such purchase defendant and Lenzer entered into written agreements wherefrom it appears that defendant sold the stock so purchased by him to Lenzer for $650. Lenzer gave his note for that sum and a mortgage on the stock to secure the payment of the indebtedness. An instrument was also executed by the parties, wherein it was agreed that Barnard should be "manager of said business and shall conduct the same for his own security until all of the named purchase price thereof shall have been paid in the manner specified in the mortgage, and, being also in the employ of said George Lenzer (Barnard) shall receive as a salary eighty dollars per month for his services." The mortgage referred to in the instrument, and mentioned above herein, provided that possession of the stock should be with Barnard, the defendant.

It is settled in this state that a license to retail liquors is a personal permit merely—not a contract in any sense. *Powell's Case,* 69 Ala. 10. Hence it is not assignable in the absence of statutory authority, and is not an asset subject to the demands of creditors, and cannot afford protection to another than the licensee or his representative in the conduct of a retailing business. —23 Cyc. 154; *Wharton v. King,* 69 Ala. 365. And it follows, we think, from the premise stated, that bankruptcy had no effect to cancel the privilege or permit held by the licensee, Lenzer, to carry on the retailing business under his license subsequent to the adjudication of his bankruptcy. So the question here is: Was

[Barnard v. The State.]

the retailing conducted by Barnard that of himself, and hence unprotected by the license of Lenzer, or was it that of Lenzer and authorized under his license? There is nothing in the record to indicate an unlawful purpose in the arrangement effected by the parties. It does not therefrom appear that the consideration for the sale of the stock by the purchaser, Barnard, to Lenzer, was simulative, feigned, in any sense, or that the stock was materially different in value to the sum agreed to be paid therefor by Lenzer. In short, there is nothing in the record to indicate a pretense to avoid the necessity for Barnord to secure a license, and for him to operate illegally under the license to Lenzer. We cannot assume such to have been the case.

From the whole arrangement between the parties, read from their writings, Barnard was an employe of the licensee to conduct the business until the agreed purchase price was paid, and was to be paid a monthly salary for his services. The provision for Barnard's engagement as manager of the business was induced by an idea of securing Barnard in the payment of the purchase price, due from Lenzer, for the stock, and was entirely consistent with the protection the parties desired and agreed to afford Barnard in the premises. That consideration or inducement did not rended the business any the less Lenzer's business of retailing the stock. And the provision in the mortgage that possession should be with Barnard until the purchase price was paid obviously from sales to be effected from the stock was, for like reason, an element not only of security to Barnard, the seller to Lenzer, but was also, consistent with the ample authority conferred by Lenzer on Barnard as general manager of the business. Had the stock been burned, without Barnard's misconduct, manifestly the loss would have been Lenzer's. It was his

property, subject to the liability fastened upon it by his purchase from Barnard. For purposes of taxation it was Lenzer's property, not Barnard's, and might have been the subject of levy and sale under execution for legal liabilities not canceled by the adjudication of Lenzer's bankruptcy. Under the circumstances here present, we think Barnard's relation to the business of retailing, conducted as shown in the record, was that of an employe of the licensee, and within the protection of the license to Lenzer to retail liquors

The judgment is accordingly reversed, and, since no other result can be attained on another trial, the appellant will be discharged.

Reversed and rendered.

DOWDELL, SIMPSON, and ANDERSON. JJ., concur.